MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
HALLIE MITCHELL HOFFMAN (CABN 210020)
Assistant United States Attorneys

    450 Golden Gate Avenue, 11th Floor
    San Francisco, California 94102
    Telephone: (415) 436-6830/7129
    Facsimile: (415) 436-7234
    E-mail: Kyle.Waldinger@usdoj.gov
           Hallie.Hoffman@usdoj.gov

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 15-00035 JST |
| Plaintiff, | **UNITED STATES' REPLY TO DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| EVELYN LANGFORD, | Sentencing Date: June 26, 2015 |
| Defendant. | Time: 9:30 a.m. |
| | Court: Hon. Jon S. Tigar |

    The defendant Evelyn Langford is scheduled to be sentenced on June 26, 2015. On June 19, 2015, the parties filed their respective sentencing memoranda. *See* docs. 17 & 18. Pursuant to Criminal Local Rule 32-5(c), the United States now files this Reply addressing two areas discussed in the defendant's sentencing memorandum.

**I.**     **Section 3553's Admonition "to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct" Justifies a Substantial Term of Imprisonment.**

    In her sentencing memorandum, the defendant points to the sentences in certain other public corruption cases to argue that a significant variance from the advisory Guidelines range is warranted. Doc. 18, at 14-19. Although the United States does not dispute the facts recited by the defendant regarding the cases she cites, notably absent from her discussion are references to cases involving

USA'S SENTENCING REPLY
CR 15-00035 JST

corruption and fraud either in the Territory of American Samoa or in this District.  As the United States

noted in its Sentencing Memorandum, a central feature of this case is American Samoa and its

institutions.  *See* doc. 17, at 2.  In addition, the United States believes that this Court should also be

guided by the kinds of sentences imposed in this District.  Accordingly, to the extent that this Court

considers sentences imposed in other public corruption and similar fraud cases, the United States

submits that it should take the following into account.

Selected Cases Involving Corruption and Fraud in American Samoa

   ***United States v. Mine Pase***, CR 11-00320 RBW (D.D.C.) – Pase served as executive director of

the American Samoa Special Services Commission, a now-defunct agency of the Government of

American Samoa ("ASG").  Pase pleaded guilty to a one-count Information charging her with

conspiracy to commit theft of federal funds.  The defendant Pase's criminal conduct involved her

arranging for herself, her relatives, Commissioners, and Commission staff to receive more than

$300,000 in federal grant funds to which they were not lawfully entitled.  CR 11-00320 RBW (D.D.C.),

doc. 20.  A federal court in Washington, D.C. sentenced Pase to 14 months' imprisonment and ordered

her to pay $325,000 in restitution.[1]

   ***United States v. Gustav Nauer***, CR 10-00891 DAE (D. Hawaii) – Nauer was the head of the

school bus division of the ASG's Department of Education.  He took bribes in exchange for ordering

"phantom" bus parts that would never be delivered to the school bus program, and for ordering parts and

services at inflated prices.  Over a three-plus year period, Nauer shared the bribe proceeds he received

from the bus-parts vendor with his co-conspirator, Paul Solofa.  Nauer appears to have netted about

$290,000.  *See* CR 10-00891 DAE, docs. 9 & 33 (D. Hawaii).  Nauer pled guilty to a charge that he

conspired to commit bribery concerning programs receiving federal funds, in violation of 18 U.S.C.

§§ 371 and 666.  He cooperated and testified at Solofa's trial.  Nauer's sentencing range was 57 to 60

months, before any reduction for cooperation.  *See United States v. Solofa*, CR 10-00250 (D.D.C.), doc.

77, at 9.  Nauer received a sentence of 25 months' imprisonment from the federal court in Hawaii.

---

[1] Pase submitted a letter of support to the Court with respect to the defendant Langford.  That letter is attached to the defendant's sentencing memorandum.  *See* Doc. 18, Ex. 1 thereto, at page 29 of 40; *see also* McDonald Decl., ¶ 7 (discussing Pase).

USA'S SENTENCING REPLY
CR 15-00035 JST                                   2

***United States v. Paul Solofa***, CR 10-00250 RBW (D.D.C.) – Solofa was involved in the above-described scheme with Nauer.  He was prosecuted in the District of Columbia.  Solofa was the financial officer for the ASG's Department of Education.  He also took bribes from the bus-parts vendor and participated with Nauer in steering the "phantom" bus-parts contracts to the vendor.  Solofa was not charged with the actual bribery, apparently due to a statute of limitations issue.  Rather, he was charged with witness tampering and obstruction of justice when he tried to get the vendor to destroy documents.  Solofa proceeded to trial.  (Nauer testified against him.)  The government recommended a sentence within the advisory Guidelines range of 41 to 51 months.  CR 10-00250 RBW, doc. 77, at 9.  The federal court in Washington, D.C. sentenced him to 35 months' imprisonment.

***United States v. Kerisiano Sili Sataua***, CR 04-00478 DAE (D. Hawaii) – Sataua was involved in a scheme to divert funds from the ASG's Department of Education ("DOE").  Sataua was the Director of the DOE.  He admitted to accepting cash bribes totaling in excess of $6,300 (as well as at least $3,000 of construction work at his personal residence) in exchange for fraudulently awarding certain DOE contracts for bookshelves, library furniture, and lab equipment to his co-conspirators and their companies.[2]  Sataua also admitted to stealing food and goods from American Samoa's School Lunch Program.  *See* CR 04-00478, doc. 8 (D. Hawaii).  He pleaded guilty to one count of conspiring to commit bribery and fraud concerning federal programs.  Sataua was originally sentenced to 30 months' imprisonment.  His sentence appears to have been later reduced to "time served."  CR 04-00478, doc. 26.  He was also ordered to pay $61,000 in restitution to the ASG.  *See also* www.justice.gov/archive/opa/pr/2005/October/05_crm_553.html (press release).

***United States v. Patolo Mageo***, CR 04-00315 HG (D. Hawaii) – Mageo was the former Director of the ASG's Department of Health and Social Services ("DHSS").  He pleaded guilty to one count of conspiring to commit bribery and fraud concerning federal programs.  Mageo admitted to defrauding the DHSS of at least $40,000 by fraudulently awarding several federally-funded construction contracts for

---

[2]  It is undersigned counsel's understanding that the alleged owner of one of the furniture companies (who was also an elected public official in American Samoa's legislature) and the Lieutenant Governor of American Samoa went to trial in federal court in the District of Columbia related to this scheme, but that the trial ended in a hung jury.  *See United States v. Sunia and Yuen*, CR 07-00225 RBW (D.D.C.).  The United States elected to not retry that case.

the Women, Infants and Children government building and other contracts for DHSS.  Mageo further admitted that he used his official position as Director to approve the fraudulent award of other federally-funded contracts in exchange for at least $10,000.  Mageo was sentenced to a 15-month period of imprisonment and ordered to pay $41,000 in restitution to the ASG.  *See* www.justice.gov/archive/opa/pr/2005/October/05_crm_553.html.

*United States v. Fa'au Seumanutafa*, CR 04-00162 DAE (D. Hawaii) – Seumanutafa was the former Director of the ASG's Department of Procurement.  He appears to have been part of the scheme in *Sataua*.  He pleaded guilty to one count of conspiring to commit bribery and fraud concerning federal programs.  He was sentenced to 8 months' imprisonment and ordered to pay a $5,000 fine and about $40,000 in restitution.  *See* www.justice.gov/archive/opa/pr/2005/October/05_crm_553.html.

*United States v. Toetu Solaita*, CR 04-00199 DAE (D. Hawaii) – Solaita was the former Program Director of the ASG's School Lunch Program.  Solaita pleaded guilty to conspiracy to commit fraud concerning federal programs.  Solaita admitted that he used his official position to approve his and his coconspirators' theft of food and goods purchased by the Program.  He received 5 years' probation and was ordered to perform 1000 hours of community service and pay $68,000 in restitution to the ASG's Department of Education.  *See* www.justice.gov/archive/opa/pr/2005/October/05_crm_553.html.

Selected Public Corruption Cases in the Northern District of California

*United States v. Roland Raymond*, CR 13-0024 WHA – Raymond, the Yurok Tribe's forestry director, embezzled approximately $850,000 from the Tribe.  He pleaded guilty to conspiracy.  The United States moved for a downward departure and recommended a 27-month sentence based on Raymond's cooperation.  (That recommendation was tempered significantly by Raymond's conduct while in custody.)  Judge Alsup imposed a top-of-the-Guidelines sentence of 37 months.

*United States v. Peter Wong*, CR 12-00483 EMC – Wong was convicted after trial of three counts of theft concerning a federally funded program arising out of his theft of a $206,412.78 certificate of deposit, a $10,000 savings bond, and a $5,613 cashier's check from estates for which he was responsible in his role as a Deputy Public Administrator for the County of San Mateo (among other alleged thefts).  The government recommended a 121-month sentence.  CR 12-00483 EMC, doc. 269.  The court ultimately imposed a sentence of 33 months.

*United States v. Stephen Tanabe*, CR 11-00941 CRB – Tanabe was a former Contra Costa County sheriff's deputy who took bribes from a private investigator to arrest or to cause the arrest of three men for drunken driving, all as part of a plot to tarnish the men in divorce cases.  In connection with two of the arrests, Tanabe received a bribe consisting of a single Glock handgun.  The United States requested a sentence of 42 months' imprisonment.  CR 11-00941 CRB, doc. 203.  The court ultimately sentenced Tanabe to 15 months' imprisonment.

*United States v. Xerxes Zapata*, CR 11-00295 EJD – Zapata was a contracting officer technical representative at the Department of Veteran's Affairs.  Zapata received between $16,000 and $20,000 in bribes from a subcontractor in return for steering valuable maintenance and construction contracts, and providing confidential pricing information, to the subcontractor.  CR 11-00295 EJD, doc. 162, at 3.  The United States recommended a low-end sentence of 24 months' imprisonment.  *Id.* at 4-5.  The court ultimately sentenced Zapata to a prison term of 16 months.

*United States v. Russell Allgire*, CR 11-00295 EJD – Allgire was also a contracting officer technical representative at the Department of Veteran's Affairs.  Allgire received a total of $20,000 in bribes from a subcontractor, as well as other side benefits, for steering work toward the sub-contractor.  The government recommended a below-Guidelines sentence of 12 months, based on a two-level variance related to Allgire's truly "significant health challenges."  CR 11-00295 EJD, doc. 143, at 4.  The court ultimately sentenced Allgire to 60 days' imprisonment.

\*   \*   \*

Section 3553's admonition to avoid disparities among defendants with similar records who engage in similar conduct is only one of several factors that courts must consider in fashioning sentences.  Here, the government submits that (1) the nature and circumstances of the offenses in this case (which involve an abuse of position of trust in the wake of a devastating tsunami), (2) Langford's history and characteristics, (3) the need to deter corruption in American Samoa, (4) the need to promote respect for the law, (5) the Guidelines calculations, and (6) the need to punish this defendant all combine to make comparison to other public corruption cases an exercise of limited value.  However, to the extent that the Court wishes to consider other such cases in fashioning a sentence in this case, it should consider the cases described above.

**II.     The Defendant's "Ability to Understand the Wrongfulness of Her Conduct."**

In her sentencing memorandum, the defendant contends that, "[a]t the time of the offense, Ms. Langford lacked the ability to understand the wrongfulness of her conduct and was unable to exercise reason in making her decisions."  Doc. 18, at 13:11-12.  The government does not dispute that the defendant was under a great amount of stress – after all, she had significant duties as a public official *and* was under great pressure to repay her debt to the Army.  But the record does not support the conclusion that Langford was unable "to understand the wrongfulness of her conduct."

As an initial matter, as the United States pointed out in footnote 3 of its Sentencing Memorandum, *see* doc. 17, at 6, the defendant's own admissions regarding acting "corruptly and with the intent to be influenced" cut at least partially against such an argument.

Second, as the United States also previously noted, the actions that the defendant took during the offense conduct indicate her appreciation *at that time* of the wrongfulness of her conduct.  This is because Langford "concealed the true nature and scope of [her] dealings with Rudin and NHHC" from employees of the ASG and the Department of Labor because of the fact that the payments she received were prohibited.  Plea Agrm., ¶ 2, at 5:10-11; Doc. 17, at 6 n.3.

Third, the government has pointed out that when Langford was first interviewed by law enforcement officials, she "confessed her crimes, admitting that she took money from Rudin and that she knew it was wrong."  Doc. 17, at 6:14-15.  During that interview, Langford stated that one reason she did not inform anyone about the $250,000 payment she received from Rudin was because she knew it was wrong to take the money from NHHC or any associated individual or company.  McDonald Decl., ¶ 4.  During that interview, Langford also stated that if the fact of Rudin's payment to her was made known, she knew that she would be required to return the funds, the ASG's contract with NHHC would be cancelled, or the ASG would not get the funding from the Department of Labor.  McDonald Decl., ¶ 5.  Indeed, during the interview, Langford noted that the $250,000 payment to her had come from NHHC (and not Dearborne International, as she thought was going to happen).  She had told Rudin that the money could *not* come from NHHC, McDonald Decl., ¶ 6, which reflects her contemporaneous understanding that it was wrong for her to receive those funds.  Yet, when the money *did* come from NHHC, Langford stated that she did not return the money because she needed it to pay her debt to the

Army.  McDonald Decl., ¶ 6.

Finally, in addition to gaining a personal benefit from the funds that Langford received from Rudin and his associated companies, Langford's son received a job from Rudin.  McDonald Decl., ¶ 8. This suggests that Langford's actions vis-à-vis Rudin were not limited to dealing with her own personal circumstances, and that she had the ability to obtain benefits from Rudin beyond her own specific need to pay off her debt to the Army.

In sum, the United States submits that the record does not support the conclusion that Langford failed to appreciate the wrongfulness of her conduct at the time.

**III.    Conclusion.**

For the reasons stated in its Sentencing Memorandum and in this Reply, the United States respectfully requests that the Court sentence the defendant Evelyn Langford to a term of imprisonment that should be no greater than 46 months, to be followed by a three-year term of supervised release.  The United States also requests that the Court order the defendant to pay restitution in the total amount of $260,000 to the ASG, as well as the special assessment of $200.

DATED:   June 23, 2015                              Respectfully submitted,

                                                    MELINDA HAAG
                                                    United States Attorney


                                                         /s/
                                                    _____
                                                    KYLE F. WALDINGER
                                                    HALLIE M. HOFFMAN
                                                    Assistant United States Attorneys